Joe F. GARY and Joe Leland Gary, Plaintiffs-Appellants,

v.

W. H. PECKHAM and Harriett C. Peckham, Defendants-Appellees.

No. 72–1642.

United States Court of Appeals, Tenth Circuit.

Nov. 13, 1972.

V. P. Crowe, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (Clyde A. Muchmore, Oklahoma City, Okl., on the brief), for plaintiffs-appellants.

Tom Webb, of Webb & Stokes, San Angelo, Tex. (James D. Fellers and Terry W. Tippens, of Fellers, Snider, Baggett, Blankenship & Bailey, Oklahoma City, Okl., and Aubrey Stokes, of Webb & Stokes, San Angelo, Tex., on the brief), for defendants-appellees.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this diversity action plaintiffs-appellants seek reversal of a judgment of the district court dismissing their complaint in partition and holding that the

defendants-appellees were entitled to possession of the property in dispute.

The controversy centers on the possession, together with rights incident to possession, of a remarkable quarter horse called GO MAN GO. The plaintiffs are each owners of one-fourth interest in GO MAN GO and each of the defendants also own a one-fourth interest. The horse, a 19-year-old stallion, is shown by the record to have tremendous value for breeding purposes. He commands stud fees in the amount of $5,000 per service and even at that rate is in tremendous demand. GO MAN GO has been in the possession of the plaintiffs and their predecessors at a ranch near Purcell, Oklahoma for some years. But as a result of the present litigation, a judgment has been entered holding that the defendants are entitled to move the horse to their ranch near Roswell, New Mexico.

We are told that possession of this animal rather than partition is the right which is in issue. The value of the possession derives from the fact that a substantial amount of income flows from housing and caring for the mares which are serviced by GO MAN GO. In addition, the horse enjoys a unique and famous standing in horse breeding circles so as to give the owners and their premises a degree of distinction, whereby the profits of their remaining horse breeding operation become more valuable and the general public is drawn to the premises for the purpose of viewing this famous animal.

In order for the rights of the respective parties to take some form, it is necessary to outline the history of the litigation. The defendant William H. Peckham purchased an undivided one-half interest in GO MAN GO from Frank Vessels and Grace M. Vessels on June 13, 1960. Under the terms of the arrangement between the Vessels and Peckham, the horse was placed under the supervision of the Vessels, and on November 17, 1967, Frank Vessels and Peckham recorded ownership as being: Vessels Stallion Farm, one-half; W. H. Peckham, one-fourth; and Mrs. Harriett C. Peckham (the other defendant here), one-fourth. At about this same time, the Vessels contracted to sell their one-half interest to one Melvin Hatley, and at this same time the Peckhams agreed to lease their one-half interest to Hatley for a term of three years. The one-half interest of the Vessels was sold to Hatley and his wife for $300,000.

The Garys, plaintiffs-appellants, acquired their one-fourth ownership from Hatley and one-half interest in the lease agreement which had been given by the Peckhams to Hatley on August 29, 1968. Then, on August 15, 1970, Hatley undertook to withdraw from the partnership with the Garys; he sold his remaining interest in the lease to the Garys and he contracted to sell also his one-fourth interest in GO MAN GO to them. Immediately thereafter the litigation commenced.

The Peckhams brought an action against the Garys in the United States District Court for the Western District of Oklahoma. This was a predecessor action to the present suit. The Peckhams prevailed, the court granting their motion for summary judgment. In essence, it was determined that the lease agreement between the Peckhams and Hatley was a personal and non-assignable contract which resulted in abandonment by Hatley of his right to manage and possess GO MAN GO. It was further ordered that the Garys were to deliver the immediate possession and management of GO MAN GO to the Peckhams. It was found and concluded that the Peckhams were entitled to the exclusive possession and management of the horse in accordance with an option in the lease agreement with Hatley (of December 18, 1967). It was held that this superior right of possession and management was to continue for the life of GO MAN GO. The judgment also gave the Peckhams the right to an accounting, but this aspect was later settled.

Finally, on February 1, 1972, the Peckhams and the Garys entered into a

management contract. In this it was recognized that the Peckhams had the superior right to possession and management for the remainder of the natural life of the stallion.

The contract expressed the intention of the parties to end the litigation and to settle all matters in dispute between them. It also provided that GO MAN GO would remain at the farm of the Garys for the remainder of the 1972 breeding season, from January 1 to August 15, 1972. But the further provision here important was that thereafter the Peckhams by exercising their option would be entitled to sole possession and management of the stallion.

Contrary to the expressions in the court's judgment and contained as well in the contract between the parties that the litigation was to end, the appellants commenced this suit soon after the purported settlement. The Garys had advised the Peckhams that the 1972 breeding season had been completed as of June 1972 and had inquired as to whether the horse was to be removed from their (the Garys') Oklahoma farm. In response to this inquiry, the Peckhams served notice on the Garys that they intended to exercise their right to possession. Immediately after receiving this notice, the Garys filed in state court an action demanding that the stallion be equitably partitioned and sought and obtained a restraining order enjoining the removal of the animal from the farm at Purcell, Oklahoma. Defendants removed the action to the United States District Court for the Western District of Oklahoma.

The Peckhams then filed a motion to dismiss. The matter was briefed and argued, and on August 9, 1972, the district court fully sustained the position of the Peckhams, dissolved the restraining order that had been entered by the district court for McClain County, Oklahoma and dismissed the suit, but plaintiffs did not give up at this juncture either. They filed an application for a stay during the pendency of an appeal to this court. Originally, the trial court granted the stay. On September 13, however, on motion of the Peckhams, the court ruled that the Peckhams were entitled to have possession of GO MAN GO pending the appeal and it modified its prior order. Accordingly, the court directed the horse to be delivered to the Peckhams on September 30, 1972, conditioned on the Peckhams' furnishing a bond in the sum of $250,000. The bond was filed and was approved. The Garys, however, proceeded to file a motion in this court seeking a temporary stay and this was granted originally in order to give the court an opportunity to examine the moving papers. It was subsequently decided to hear the case on an accelerated basis and to determine it on its merits. The cause now stands submitted.

In seeking reversal the appellants contend in essence that the action seeking a partition supersedes everything which has gone before; that their right to a partition is so absolute as to preclude the defendants from exercising their right to possession so that the court must maintain the status quo and proceed to partition the horse at once. Subsidiary contentions are that an action for an equitable partition of the stallion cannot be dismissed without a trial and that the court erred in holding that the contract granting an absolute right to the Peckhams to have possession and management of the animal constituted a waiver of any right which the Garys may have had to institute a partition suit.

The trial court, as noted, determined that the Garys had impliedly waived their right; that this waiver to institute a partition suit arose when they acknowledged the right of the Peckhams to possession and management of the horse for its serviceable life. It was reasoned that the Garys' acceptance of the Peckhams' right was inconsistent with a suit in partition, and thus precluded such action. The court went on to say in part:

&ast; &ast; &ast; This action to partition, if granted, would necessarily require a

sale of GO MAN GO. Such sale would proscribe possession and management of the Peckhams unless they should be the purchasers on a partition sale. The Court views the present action as an attempt by the Garys to further question the right of the Peckhams in this Court to the exclusive possession and management of GO MAN GO in violation of their express agreement to the contrary on February 1, 1972.

Partition would frustrate and render impossible the fulfillment of the agreement between the co-owners. The Court found such sufficient to bar partition in *McInteer*, supra. There the property had been acquired for "speculation purposes." Here the GO MAN GO was purchased for "breeding purposes." The purpose for which GO MAN GO was acquired by the parties and the purpose to which it will be devoted would be defeated by partition by sale at the present time. Not only would partition frustrate the contract of the parties of February 1, 1972, but it would also vitiate the Judgment of this Court entered in CIVIL NO. 71–383 on January 25, 1972.

■ According to our view of the case, the primary and paramount issue is whether the Peckhams are entitled to possession of this unique horse during the foreseeable future and until some other and different order is entered. In our judgment the trial court was entirely correct in its ruling to this effect. This was hard fought litigation involving an antecedent lease contract which had been upheld by a judgment of the district court, which judgment became final when the parties embodied it in an agreement which called for termination of the litigation. The effect of all this was that plaintiffs first were adjudicated to have no possessory right and following the adjudication renounced it altogether.

■ With this background, the Peckhams' right to possession is not to be denied and it is entitled to be recognized at once, for the record before us reveals that further delay will be costly. It is most difficult to understand how the Garys can in good conscience assert a right to retain possession after having clearly waived that right following entry of the judgment. We recognize, of course, that in Oklahoma and elsewhere there are few restrictions on the right of a co-owner to maintain a partition action. The rationale for this is that a co-owner should not ordinarily be forced to continue in a relationship of co-ownership contrary to his wishes. The right, however, is not without limitation, and one qualification which has had recognition by the Supreme Court of Oklahoma is that the equitable nature and character of the action precludes its use for the accomplishment of a fraudulent or unconscionable purpose. *See* Wolfe v. Stanford, 179 Okl. 27, 64 P.2d 335, 338 (1937). In one case, Hassell v. Workman, 260 P.2d 1081 (Okl.1953), the Supreme Court of Oklahoma held that hardship on one of the co-tenants involving inability to purchase at a partition sale furnished a sufficient ground for denying relief.

■ This court has also had occasion to note that under Oklahoma law there is a discretion in awarding or denying relief to the extent that it can prevent partition from becoming an instrument of fraud or oppression. *See* Sadler v. Public Nat'l Bank & Trust Co., 172 F.2d 870, 876 (10th Cir. 1949). *See also* Shell Oil Co. v. Seeligson, 231 F.2d 14, 18 (10th Cir. 1955) (involving Kansas law).

■ In the light of these considerations it follows that a partition suit is not to be tolerated as a legal maneuver designed to supersede an unquestionable right to possession. As the Oklahoma Supreme Court stated in De Mik v. Cargill, 485 P.2d 229, 235 (Okl.1971):

Where a contract is valid and fairly entered into plaintiff must abide by

its terms, and cannot maintain an action for partition, or rely upon a court of equity to negotiate a new or better contract. McInteer v. Gillespie, 31 Okl. 644, 122 P. 184.

The trial court expressed this idea in its opinion in a restrained way when it observed that the Garys in this partition suit were seeking to again renew their attack on the exclusive right of the Peckhams to have the possession and management of the horse.

We emphasize that our decision herein is limited to the question of the Peckhams' right to possession of GO MAN GO. The partition suit is a secondary and distinct issue in the case and it is necessary to remand the case for further proceedings with respect to this. We anticipate, however, that detachment and isolation of the partition issue may very well simplify it.

We find it impossible to uphold the dismissal of the complaint and cause of action seeking a partition because we see at least one question of fact and perhaps more. Thus, a trial or other factual hearing appears to be necessary. The question of implied waiver (and there is no contention that there was an express waiver) is an issue of fact which is to be decided only after an evidentiary or factual hearing. On remand the court is free, however, to consider not only the factual issue mentioned, but any other questions which may be interposed.

In summary then, the cause is remanded with directions to the trial court to execute its order vesting possession in the Peckhams and divesting the Garys. This should be carried out without delay. The right of the Garys to prosecute a partition action remains an open question to be determined by the trial court following an appropriate hearing.

The judgment is affirmed in part, is reversed in part, and is remanded to the trial court for further proceedings consistent with the views expressed herein.