Virginia S. HINTON, Appellant,

v.

Harold C. HINTON, Appellee.

No. 12915.

District of Columbia Court of Appeals.

Argued Oct. 4, 1978.

Decided Oct. 25, 1978.

Rehearing Denied Dec. 19, 1978.

S. Churchill Elmore, Washington, D.C., for appellant.

Courts Oulahan, Washington, D.C., for appellee.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant contends that the Superior Court was without jurisdiction to order the partition of certain real property in which she was a tenant in common. She has noted her appeal from the denial of her motion for a preliminary injunction and from the related order vesting title to the property in the purchaser thereof. We affirm.

### I

Virginia and Harold Hinton formerly were husband and wife. Previously they owned a house in the District of Columbia as tenants by the entirety; their interests became those of tenants in common by virtue of a Maryland divorce. In May of 1977, Mr. Hinton commenced an action for partition of the property. D.C. Code 1973, § 16–2901. Service on Mrs. Hinton was attempted unsuccessfully by a marshal and by a private process server over a span of three months. A copy of the complaint was delivered to the attorney who had represented Mrs. Hinton in the divorce proceeding. However, he declined to accept it as having been properly served because he was not representing her in the partition action. Nevertheless, in all likelihood that attorney forwarded the complaint to Mrs. Hinton, for Mr. Hinton later alleged by affidavit that Mrs. Hinton had contacted his counsel and told counsel that she had read the complaint but would not be served until she was found by a process server.

In August of 1977, having received a notice of foreclosure on the house (which had been permitted to fall into serious disrepair), Mr. Hinton moved for an order permitting the sale of the property. Mrs. Hinton did receive a copy of that motion by certified mail. She filed a pro se reply in which she asserted, *inter alia*, that the motion was "out of order" because there had been no personal service on her, and further that her reply did not constitute an acceptance of service.

Thereafter, on September 6, 1977, following a hearing which was not attended by Mrs. Hinton, appellee's motion was granted. By a written order issued two days later, the motions judge found in part:

3. Despite diligent efforts to serve Defendant, she has to date avoided service of process, although she is known to have been living at the [house].

4. Constructive notice has been given to Defendant concerning Plaintiff's Motion for an Order to sell the premises, by certified mail served upon Defendant's Washington, D.C. attorney.

5. The Court has jurisdiction to order the sale of the premises and to provide for the disposition of the proceeds of the sale.

The court directed that a copy of its order, as well as the complaint and other pleadings, be served on Mrs. Hinton personally or, in the event personal service could not be effected, posted on the door of the premises.[1] Finally, the motions judge ordered a 20-day period of grace from the

---

1. Posting was effected on September 15, 1977.

# 9

time of service or posting before a sale could be authorized.

Appellant contends that she was out of town for the entire month of September and, consequently, that she did not see the order within the allotted 20 days. She claimed that she first became aware of the order on October 3, 1977. In response, rather than timely appealing the September 8 ruling, on October 19 she sought and was granted a temporary restraining order barring sale of the property, conditioned upon her retaining counsel prior to the date set for a hearing on her motion for a preliminary injunction.

In the interim, pursuant to the original order authorizing sale, Mr. Hinton's counsel had accepted an offer of purchase for the property. However, he was unable to close the sale because of the pending motion for an injunction.

At the subsequent hearing on the motion for a preliminary injunction, appellant reasserted her "jurisdictional" claim. The trial judge ruled, however, that that question had been settled in the initial order authorizing sale and that he was bound by that determination. Appellant also mounted several substantive attacks on the September 8 order which were fully heard by the trial court but which were resolved against her. The motion for a preliminary injunction was denied, and, by order dated November 11, 1977, the trial court concluded that "the property should be sold immediately" and directed that title was vested in the purchaser. This appeal followed.

## II

Throughout this litigation, appellant has contended that the actions of the various trial judges were all invalid because the Superior Court never acquired personal jurisdiction over her. This attack is bolstered by citation to authorities which stress the need for personal service as a basis for jurisdiction. Appellant's arguments and authorities, however, are far wide of the mark, for personal jurisdiction is not a proper issue in this case.

Appellee's complaint sought the partition of real property, a remedy which any tenant in common is entitled to seek as a matter of right. *Cobb v. Gilmer*, 124 U.S.App.D.C. 398, 400, 365 F.2d 931, 933 (1966). More important for our purposes, an action for partition is a proceeding which is quasi in rem. The descriptive labels attached to different "types" of jurisdiction unfortunately have seemed to carry with them a certain imprecision which tends to blur the distinctions between them. We quote the Supreme Court's recent elucidation of this subject in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1976):

> If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated *"in personam"* and can impose a personal obligation on the defendant in favor of the plaintiff. If jurisdiction is based on the court's power over property within its territory, the action is called *"in rem"* or *"quasi in rem."* The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner . . . .
>
> . . . . .
>
> A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the non-existence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Restatement, Judgments 5–9. *Hanson v. Denckla*, 357 U.S. 235, 246 n.12, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). [433 U.S. at 199 & n.17, 97 S.Ct. at 2577–2578 & n.17.]

An action for partition falls within the type-one quasi in rem category. Where that situation exists, a court sitting where the realty is located has the power—*i. e.*,

the subject matter jurisdiction—to dispose of the property. *Shaffer v. Heitner, supra,* 433 U.S. at 207–08 & n.24, 97 S.Ct. 2569.

This does not mean that the trial court is unfettered in its powers. Rather, even where the property provides the basis for jurisdiction, a court may not exercise its authority over it unless reasonable efforts have been made to give the affected property owner notice of the proceeding. *Shaffer v. Heitner, supra,* at 206, 97 S.Ct. 2569. This is, of course, a function of due process as set forth in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny. *See Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). Thus, the core question in a partition suit is not whether the court has acquired personal jurisdiction over the defendant—it does not need it—but rather whether the defendant has been given sufficient notice, under all the circumstances, to apprise him of the pendency of the action and afford him an opportunity to object. *Mullane v. Central Hanover Bank & Trust Co., supra,* at 314, 70 S.Ct. 652. Due to another well-established principle, however, that question does not require resolution.

If a court were to render judgment without according the defendant proper notice (or without personal jurisdiction or subject matter jurisdiction), that judgment would be void and of no effect. *See, e. g., Restatement of Judgments,* § 5–8 (1942). If, however, the party against whom such a judgment is entered has an opportunity to appeal therefrom and foregoes that opportunity, the judgment is valid. The defendant then is bound by the judgment and cannot collaterally attack the ruling. *See, e. g., Durfee v. Duke,* 375 U.S. 106, 113–14, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Stoll v. Gottlieb,* 305 U.S. 165, 171–

72, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932); *Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 524–26, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). This doctrine has come to be known as the "bootstrap principle." [2] It is a recognition of the essential tenet that a court has jurisdiction to determine its own jurisdiction.[3] That is, whenever a party appears and challenges the jurisdiction of a court he concedes that the court has authority to determine whether it has jurisdiction. If the party is dissatisfied with the resulting ruling, the remedy is an appeal. *See, e. g., Baldwin v. Iowa State Traveling Men's Ass'n, supra,* at 524–25, 51 S.Ct. 517. Failing that, the decision becomes res judicata as to the matters challenged, as well as to those which were not litigated but which might have been. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 377–78, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *In re C.A.P.,* D.C.App., 359 A.2d 11, 12 (1976); *see Thornton v. Little Sisters of the Poor,* D.C.App., 380 A.2d 593, 595 (1977); *Taylor v. England,* D.C.App., 213 A.2d 821, 823 (1965).

In contrast, at an earlier stage, if a defendant believes that the court is without jurisdiction he has the option to ignore the proceedings. Then if judgment unwarrantedly is entered against him by default, it may be collaterally attacked since the defendant never appeared at all. *Baldwin v. Iowa State Traveling Men's Ass'n, supra,* at 525, 51 S.Ct. 517. Mrs. Hinton did not pursue this latter route. She traveled the former and appeared in the action to contest proper notice. Having done so, she became bound by the trial court's ruling unless and until she achieved a different result on appeal. No timely appeal was taken. Thus the trial court's original finding of proper notice was conclusive of the issue and was binding on the judge who property denied the motion for a prelimi-

---

2. *See* Dobbs, *The Validation of Void Judgments: The Bootstrap Principle,* 53 Va.L.Rev. 1003 (1967); Dobbs, *The Scope of Bootstrap,* 53 Va.L.Rev. 1241 (1967); C. Wright, Law of Federal Courts § 16 at 50–51 (2d ed. 1970).

3. We use the term "jurisdiction" at this point for convenience; it is intended to encompass due process notice as well.

nary injunction and ordered the vesting of title to the property in the purchaser.[4]

*Affirmed.*

---

4. The trial judges gave Mrs. Hinton the opportunity to fully litigate all the issues in the case. However, the proper procedure for challenging an order of partition is an appeal to this court, not the seeking of a temporary restraining or-der from one judge barring effectuation of what had been ordered by another judge. In turn, the preliminary injunction judge could have disposed of the matter before him in a more summary fashion.