Ruthel CARTER, Appellant,

v.

**Eddie F. CARTER, Appellee.**

No. 84–273.

District of Columbia Court of Appeals.

Argued Oct. 4, 1985.
Decided Oct. 24, 1986.

---

Darrel S. Parker, Washington, D.C., for appellant.

William R. Voltz, Washington, D.C., for appellee.

Before BELSON, ROGERS and STEAD-MAN, Associate Judges.

STEADMAN, Associate Judge:

Upon divorce, a husband and wife were awarded the family home as tenants in common. The husband now wishes to partition the property over the objection of the wife. She appeals from a judgment ordering a partition sale. Resolution of the dispute requires us to examine the effect of a property division at divorce under D.C.Code § 16–910 (1981), upon the right of one co-tenant in common to partition under D.C. Code § 16–2901 (1981).

## I.

After a marriage of almost 12 years, plaintiff-appellee (husband) and defendant-appellant (wife) were divorced on June 17, 1981. Among matters at issue was the disposition of the family home. Pursuant to D.C.Code § 16–910(b) (1981), the trial court in its "findings of fact, conclusions of law and judgment of absolute divorce" determined that the husband should receive a 75% interest in the home and the wife a 25% interest, and the judgment so provided. In its findings of fact, the trial court further stated that "[t]he Court declines to order a sale of the house and will permit both parties to continue to reside in the house"; however, its conclusions of law and its judgment were silent on any such limitation. An appeal was noted by husband from this decree but never perfected. *See* No. 81–934 (D.C. Sept. 4, 1981) (order dismissing appeal for failure to proceed).

On May 17, 1982, husband filed a civil action seeking a partition sale of the home under D.C.Code § 16–2901(a) (1981).[1] Moving for summary judgment, husband asserted that the statute as interpreted in *Hinton v. Hinton*, 395 A.2d 7 (D.C.1978), gave him an absolute right to partition. Wife, stressing the use of the word "may" in the statutory language, argued that a partition court could properly take into account equitable considerations and refuse a partition sale. She invoked the divorce court's "finding" that no sale would be held and that the parties would be permitted to reside in the house. In addition, she set forth specific factors which she asserted equitably mitigated against partition.[2] Alternatively, the wife proposed that the court transfer the matter to the Domestic Relations Branch of the Civil Division for resolution as part of the ongoing divorce proceedings there.[3]

The trial court deemed itself bound by controlling precedent to grant partition on the demand of one cotenant as of right. It granted the motion for summary judgment and ordered a partition sale, with the net proceeds to be divided among husband and wife according to their respective interests. This appeal by wife followed.

## II.

A cotenant's unilateral right of partition is an integral element of the form of property ownership inherited from English law known as the tenancy in common. *See* R. CUNNINGHAM, W. STOEBUCK, & D. WHITMAN, THE LAW OF PROPERTY [hereinafter cited as CUNNINGHAM] § 5.11 (1984); 4A POWELL ON REAL PROPERTY, ¶¶ 609–613 (1982); 4 THOMPSON ON REAL PROPERTY §§ 1822–1828 (repl. ed. 1979); 2 TIFFANY, LAW OF REAL PROPERTY §§ 473–483 (1939). The right makes it possible for any dissatisfied cotenant to, in effect, withdraw from and dissolve the quasi-partnership that cotenancy entails. Partition fosters the principle of free alienability of property by making it impossible for any one cotenant to veto a transfer of another cotenant's share, unencumbered by the cotenancy. *Cf.* POSNER, ECONOMIC ANALYSIS OF LAW 53–54 (2d ed. 1977). Today in most, if not all, jurisdictions in this country, the right of partition is governed by statutes which vary in detail. 4A POWELL, *supra*, ¶ 609 at 635; 4 THOMPSON, *supra*, § 1822 at 277.

---

1. D.C.Code § 16–2901(a) provides:

   The Superior Court of the District of Columbia may decree a partition of lands, tenements, or hereditaments on the complaint of a tenant in common, claiming by descent or purchase, or of a joint tenant; or when it appears that the property can not be divided without loss or injury to the parties interested, the court may decree a sale thereof and a division of the money arising from the sale among the parties, according to their respective rights.

2. These factors related both to wife's personal situation—that she was ill and unemployed and that she and her minor children had no other place to go—and to husband's misdeeds—harassment, turning off utilities, refusal to support minor son. She also asserted that in the then existing market, the property could not be sold.

3. The issue of alimony, then in dispute, has apparently been subsequently resolved adversely to wife. *Carter v. Carter*, 473 A.2d 395 (D.C. 1984).

However, these statutes have not generally been construed to affect the rule that the right of partition,[4] as an integral element of the cotenancy form of ownership, inheres to each cotenant alone. 4 THOMPSON, *supra*, § 1822 at 275–76, 278–80; 2 TIFFANY, *supra*, § 474, and cases cited.

Almost a century ago, the Supreme Court of the United States confirmed this right of partition as established in the District of Columbia in *Willard v. Willard*, 145 U.S. 116, 12 S.Ct. 818, 36 L.Ed. 644 (1892). In that case, partition was sought under an Act of Congress, passed in 1876, which bore considerable similarity to the present wording of D.C.Code § 16–901 (1981), but in addition contained the phrase "in the discretion of the court."[5] The defending cotenant there made much the same argument as wife in the instant case, *viz.*, that the use of such language changed the common-law rule and permitted the court to refuse partition. The Supreme Court squarely held that the traditional rule applied, notwithstanding that pursuant to the statute a bill in equity was before it.

> In a court having general jurisdiction in equity to grant partition, as in a court of law, a tenant in common, whose title in an undivided share of the land is clear, is entitled to partition, as a matter of right, so that he may hold and enjoy his property in severalty.

145 U.S. at 120, 12 S.Ct. at 819. The "discretion" given the trial court was in choosing between a partition in kind or by sale. 145 U.S. at 121, 122, 12 S.Ct. at 819. Subsequent cases in this jurisdiction have reiterated the holding of *Willard* that partition is a remedy that any tenant in common is entitled to seek as of right. *See Hinton v. Hinton, supra,* 395 A.2d at 9; *Cobb v. Gilmer,* 124 U.S.App.D.C. 398, 400, 365 F.2d 931, 933 (1966). We see nothing in the present wording of the statute that would justify a modification of the *Willard* holding and its successors, as applied to the facts of this case.

True it is that in *Cobb v. Gilmer, supra,* 124 U.S.App.D.C. at 400, 365 F.2d at 933, the court in dictum noted that the right of partition was "subject ... to equitable considerations," citing 4 THOMPSON, *supra,* §§ 1822–1823, and 2 TIFFANY, *supra,* §§ 473–475. Indeed, the development of the law of partition in England and in this country has led to its being considered, as in *Willard v. Willard, supra,* primarily an equitable action. CUNNINGHAM, *supra,* at 231 n. 12, citing 2 AMERICAN LAW OF PROPERTY § 6.21 at 95 (Casner ed. 1952). Nevertheless, invocation of the mantra of "equitable considerations" bestows no license upon a trial court to grant or deny partition according to its views of the respective situations of the cotenants. Rather, the equitable considerations referred to deal in

---

4. A common matter at issue in partition actions is whether the property is to be partitioned in kind, or sold and the proceeds distributed among the cotenants. The common-law preference is for the former, where possible, although it appears that in fact a sale is the more typical outcome. 4A POWELL, *supra* ¶ 612. In this case, neither party raises the possibility of a partition in kind. Additionally, a court may not force one cotenant to sell his or her interest to the other cotenant; the partitioning cotenant is entitled to the competitive benefits of a public sale. *Hairston v. Hairston,* 454 A.2d 1369, 1372–73 (D.C.1983).

5. That Act in pertinent part read:

Sec. 1. All tenants in common and coparceners of any estate in lands, tenements or hereditaments equitable, as well as legal, within the District of Columbia, may, in the discretion of the court, be compelled in any court of competent jurisdiction to make or suffer partition of such estate or estates. In proceedings for partition all persons in interest shall be made parties in the same manner as in cases of equity jurisdiction. And in proceedings in partition under this act, the court may, in addition to the powers herein conferred, exercise such powers as are or may be conferred by virtue of the general equity jurisdiction of the court.

Sec. 2. The court, in all cases, in decreeing partition, may, if it satisfactorily appears that said lands and tenements, or any estate or interest therein, cannot be divided without loss or injury to the parties interested, decree a sale thereof, and a division of the money arising from such sale among the parties, according to their respective rights and interests.

the main with collateral matters such as determining whether partition will be in kind or by sale, *see, e.g., Willard v. Willard, supra,* or adjusting unequal shares through required payments of "owelty," *see, e.g., Chesmore v. Chesmore,* 484 P.2d 516 (Okla.1971), or making a complete accounting among the cotenants as part of the partition action, *see, e.g., Rainer v. Holmes,* 272 Wis. 349, 75 N.W.2d 290 (1956).

In a few cases courts have taken into account the financial and other circumstances of the cotenants [6] and invoked broad equitable language as justifying the denial of partition, but the factual circumstances tend to be unusual. *See, e.g., Hassell v. Workman,* 260 P.2d 1081 (Okla.1953) (prevention of fraud and oppression in business joint venture justifies postponement of partition); *Craig v. Maher,* 158 Or. 40, 74 P.2d 396 (1937) (attorney awarded 1/15 interest in land as fee denied partition, but court in lieu thereof required payment by cotenant of reasonable fee in cash; attorney did not appeal).[7] We have no occasion here to determine the degree to which our

statute might lend itself to flexibility in like situations. The right of partition is an inherent element of the tenancy in common form of ownership, designed to prevent a forced continuation of shared ownership of property. To deny it is to effectively expand the property rights of one cotenant at the cost of the diminution of those of the other. Only a compelling case would justify serious consideration of such a result under our statute.[8]

### III.

However, the right to partition, while normally an integral part of the cotenancy form of ownership, is like most property rights subject to possible limitation by voluntary act of the parties or in its initial creation. Where such restrictions exist that are not violative of the common-law rule against unreasonable restraints on alienation,[9] they will be recognized by a partitioning court.[10] In other words, the limitation on the right of partition is treated as a modification of the property right itself, which is correctly honored by the

6. A distinction should be drawn between situations where it is argued that the respective positions of the parties or their conduct make it inequitable to partition and those where a valid limitation on partition exists as a part of the very creation of the co-ownership interest. Although language of equitable discretion may be used in the latter type of case, it would be more accurate to characterize the situation in pure property terms as affecting the very definition of the scope of the tenancy interest at its creation. *See* the discussion in part III *infra.*

7. Co-ownership of minerals in place, including oil and gas rights, presents particular problems. *See, e.g., Shell Oil Co. v. Seeligson,* 231 F.2d 14, 17 (10th Cir.1955).

8. *Cf. Heldt v. Heldt,* 29 Ill.2d 61, 193 N.E.2d 7 (1963) (partition granted to wife despite allegation of improper motive and irreparable hardship to husband and minor children).

9. An agreement prohibiting judicial partition will in general be sustained if its duration is limited to a "reasonable time." Likewise there are cases which sustain such restraints imposed by the creator of the tenancy if similarly limit-

ed. Cunningham, *supra* at 231–32 and cases cited; Tiffany, *supra,* § 474 at 309–12; 37 A.L.R. 3d 962 (1971).

10. Such a restriction on the partition right may be express or may arise by implication, such as where a purpose of the creator of the cotenancy is dependent upon the continued existence of the concurrent estates, *see, e.g., Carter v. Weowna Beach Community Corp.,* 71 Wash.2d 498, 429 P.2d 201 (1967) (partition denied where plaintiff purchased cotenancy interest in property with full knowledge of original grantor's intended use as community park and watershed) or where the parties themselves have adjusted their rights, so as to compel such a conclusion, *see, e.g., Gary v. Peckham,* 468 F.2d 1241 (10th Cir.1972) (partition sale of stallion denied where one cotenant had been granted exclusive possession for life of stallion). An example bearing some similarity to the case before us is *Sartin v. Sartin,* 405 So.2d 84 (Miss.1981). In that case, partition by the husband was denied where the divorce decree stated that the wife should have the exclusive use and possession of the property "during her widowhood or until further Orders of this Court." *See Recent Developments, Equitable and Contractual Defenses to Partition,* 18 Stan.L.Rev. 1428 (1966).

partitioning court in accordance with normal property principles.[11]

With this consideration in mind, we now turn to the issue whether the fact that the tenancy in common in the instant case stems from a court-determined property division pursuant to a divorce decree may have a bearing on the normal rule allowing partition as of right.

Under D.C.Code § 16–910 (1981), the trial court has broad discretion in adjusting the property rights of divorcing spouses. *Leftwich v. Leftwich*, 442 A.2d 139, 142 (D.C.1982); *Benvenuto v. Benvenuto*, 389 A.2d 795, 797 (D.C.1978). As we have said, "no hard and fast rule can be laid down. Each case must be decided in its particular circumstances." *Id.* at 797 (quoting *Lundregan v. Lundregan*, 176 A.2d 790, 792 (D.C.1962)).

The flexibility that the trial court has with respect to property rights is illustrated by a case decided under a prior version of the statute. In *Finch v. Finch*, 378 A.2d 1092 (D.C.1977), the trial court awarded the spouses an "equal 50% interest" in the real property but reserved to the wife for a period of three years the exclusive right to possession and use. (The wife was to assume sole responsibility for the mortgage, taxes and like expenses during that period.) In upholding this action against challenge by the husband we stressed the broad discretion of the trial court in awarding or apportioning property upon divorce.[12]

■ Therefore, we do not doubt that the trial court in granting the divorce in this case had the power to make provision that the 75%–25% division of the interest in the home was subject to certain limitations and conditions of a property nature which might affect the right of partition. The issue in the instant case is whether in fact such a condition or limitation was imposed. The trial court's judgment stated simply that the husband was awarded a 75% interest and the wife a 25% interest in the real property. As against third parties, this unqualified property award may well be determinative. However, the findings of fact contain the ambiguous further provision with respect to the home, namely, "[t]he Court declines to order a sale of the house and will permit both parties to continue to reside in the house." This provision presents uncertainty as to its intended impact on the right of partition.

■ We think that in an action for partition, involving the original parties to the property division under a divorce decree, where (as here) the full rights of the parties are uncertain from a reading of the entire decree, a court has the power to determine whether the decree itself, taken as a whole and considered in the context of the divorce proceedings,[13] imposes limitations or conditions on the cotenancy interests affecting the right of partition. This is analogous to the undoubted power of a partition court to determine the nature of the cotenants' rights in the property. 4A POWELL, *supra*, ¶ 611 at 646–47; 4 THOMPSON, *supra*, § 1826 at 308–09.

■ Whether this is best done by the partition court in the Civil Division assum-

11. Several cases speaking loosely of broad equitable limitations on the right of partition are more properly, in our view, explainable as falling within this analysis. An example is *Newman v. Chase*, 70 N.J. 254, 359 A.2d 474 (1976), one of several recent cases in which the New Jersey courts have been working out the full property consequences of the unusual form of tenancy by the entirety existing in that state. In New Jersey, unlike most jurisdictions, the creditor of either spouse may levy upon that spouse's interest in a tenancy by the entirety, thereby converting it into a tenancy in common. In *Newman v. Chase*, the court held that such a creditor could not force as of right a partition sale of the family home. *See* Note, 8 SETON HALL L.REV. 112, 128–30 (1976).

12. *See also Broadwater v. Broadwater*, 449 A.2d 286 (D.C.1982) (husband with degenerating spinal arthritis awarded "possession and a 60% ownership interest" in house, plus the right for a limited time to buy the wife's 40% interest at "market value").

13. The record before us on this appeal contains only the final decree of divorce.

ing this role itself or by transferring the case for determination by a court in the Family Division[14] turns on discretionary internal operating procedures of Superior Court administration. *Cf. Millman Broder & Curtis v. Antonelli,* 489 A.2d 481, 483 (D.C.1985); *Andrade v. Jackson,* 401 A.2d 990, 993 (D.C.1979). In either case, the court will be acting to interpret the nature of the property rights arising from the original divorce decree.[15] It will not be adjusting the property rights so created in light of subsequent events, except to the extent that such right of adjustment may have been impliedly retained by the court in the original decree. *Cf. Zapata v. Zapata,* 499 A.2d 905 (D.C.1985); *Quarles v. Quarles,* 353 A.2d 285 (D.C.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 321, 50 L.Ed.2d 290 (1976); *Travis v. Benson,* 360 A.2d 506 (D.C.1976).[16] Once determined, property rights stemming from a division under D.C. Code § 16–910 are no different in their finality from any other creation or transfer of property rights.[17]

*Reversed and remanded for further proceedings not inconsistent with this opinion.*

**14.** The trial judge in the divorce proceedings is now fully retired.

**15.** Real property interests resulting from a property division under § 16–910 ought, like all other real property rights, to be as clear, fixed and settled as possible. *See Sebold v. Sebold,* 143 U.S.App.D.C. 406, 412–13, 444 F.2d 864, 870–71 (1971). *Cf. Ripp v. Ripp,* 38 A.D.2d 65, 327 N.Y.S.2d 465, 470 (1971), *aff'd,* 32 N.Y.2d 755, 344 N.Y.S.2d 950, 298 N.E.2d 114 (1973). It has been suggested that as a general rule property should be divided in such a manner as to avoid, if possible, ongoing interaction between the parties and the consequent possibility of continuing litigation. *See* L. GOLDEN, EQUITABLE DISTRIBUTION OF PROPERTY § 8.08 (1983), and cases cited. Disposition of the family home, of course, can present difficult problems in this regard. *See* J. MCCAHEY, VALUATION & DISTRIBUTION OF MARITAL PROPERTY ch. 12 (1985).

**16.** Not before us on this appeal is the general issue of the precise extent to which a court may retain continuing jurisdiction over a property division made under D.C. Code § 16–910 (1981).

*Cf. Carter v. Carter,* 473 A.2d 395 (D.C.1984) (continuing power of court to award alimony under D.C. Code § 16–914 (1981) questioned where no award made in original decree, even though such power was expressly reserved in such decree). We think that at the least, the court could have allowed continued possession of the property by both parties for a reasonable period of time, with a suspension of the unilateral right of partition during that period without further order of the court. *Finch v. Finch, supra; Sartin v. Sartin, supra.* Whether in fact this or other powers were retained in the original decree we leave to the determination of the trial court. To the extent they are found to have been so retained, an exercise of such powers at this time so as to modify or remove any limitation imposed in the original decree on the right of partition will be undertaken under legal principles applicable to an ongoing Family Division proceeding.

**17.** They may, of course, be indirectly affected by determinations made under the continuing power of the court to adjust alimony or support under D.C. Code §§ 16–914, –916 (1981).