[S. F. No. 22261.   In Bank.   Nov. 10, 1967.]

DANIEL GORHAM WHEALTON, Plaintiff and Respondent, v. HAZEL LORRAINE WHEALTON, Defendant and Appellant.

John A. Bohn, Jr., for Defendant and Appellant.

John E. Anderton and Helen B. Larson for Plaintiff and Respondent.

Wagener, Lynch, Curran & Minney and H. Ward Dawson as Amici Curiae on behalf of Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant appeals from a default judgment annulling her marriage to plaintiff on the ground of fraud.

Plaintiff, a petty officer on active duty with the United States Navy, married defendant at Bel Air, Maryland, on June 15, 1964. Thereafter his military duties took him from place to place on the east coast until he was assigned to the U.S.S. *Repose* at the San Francisco Naval Shipyard. He arrived in California on July 14, 1965. Plaintiff and defendant lived together for only six or seven weeks on the east coast.

On September 3, 1965, plaintiff filed this action for annulment of the marriage. Summons was issued and an order for publication of summons was filed on the same day. Publication of the summons was accomplished as prescribed by law. Defendant received a copy of the summons by mail at her home in Maryland on September 7, 1965. On September 11, 1965, she wrote the court that she was having difficulty obtaining legal counsel, but that she wished "it known that it is my earnest desire and intent to contest this complaint." On

October 11, 1965, the court entered her default, heard testimony in support of the complaint, and entered a judgment annulling the marriage. On October 19, 1965, defendant made a motion to set aside the default and the judgment by default and to permit the filing of an answer and a cross-complaint. The motion was denied on November 9, 1965.

■ Defendant contends that the default judgment must be reversed on the grounds that it was prematurely entered and that the court did not have jurisdiction of the subject matter.

Since defendant resides outside the state, the summons could be served by publication (Code Civ. Proc., §§ 412, 413). "When publication is ordered, personal service of a copy of the summons and complaint out of the State is equivalent to publication and deposit in the post office. Service is complete upon the making of such personal service or at the expiration of the time prescribed by the order for publication, whichever event shall first occur." (Code Civ. Proc., § 413.) ■ Defendant had 30 days after service was complete to appear and answer (Code Civ. Proc., § 407) and would not be in default until the expiration of that time (Code Civ. Proc., § 585, subd. 3; *Foster* v. *Vehmeyer* (1901) 133 Cal. 459, 460 [65 P. 974]; *Grewell* v. *Henderson* (1855) 5 Cal. 465, 466; *Burt* v. *Scranton* (1851) 1 Cal. 416, 417.) ■ Since she was not personally served[1] the 30-day period could not begin before September 25, 1965, the earliest date on which service of publication could be deemed completed. (See Code Civ. Proc., § 413; Gov. Code, § 6064.) ■ The entry of default and the default judgment entered on October 11, 1965, only 16 days later, are therefore void.

Even if the default judgment were not premature, it would have to be reversed, for neither the pleadings nor the evidence establish that either party was a domiciliary of California. The court therefore lacked jurisdiction to award an ex parte annulment.

In ex parte divorce actions, a bona fide domicile of at least one of the parties within the forum state is necessary for jurisdiction. (*Williams* v. *North Carolina* (1945) 325 U.S.

---

[1]Receipt of the mailed summons on September 7, 1965, was not personal service. The requirements of a personal service are strictly construed; a mere showing that a party had notice in fact is insufficient. (*Lettenmaier* v. *Lettenmaier* (1962) 203 Cal.App.2d 837, 843-844 [22 Cal.Rptr. 156]; *Sternbeck* v. *Buck* (1957) 148 Cal.App.2d 829, 832 [307 P.2d 970].)

226, 229, 238 [89 L.Ed. 1577, 65 S.Ct. 1092, 157 A.L.R. 1366];
*Crouch* v. *Crouch* (1946) 28 Cal.2d 243, 249 [169 P.2d 897];
see D. Currie, *Suitcase Divorce in the Conflict of Laws*; *Simons, Rosenstiel, and Borax* (1966) 34 U.Chi.L.Rev. 26, 45;
*Developments—Jurisdiction* (1960) 73 Harv.L.Rev. 909, 966;
Rest., Conflict of Laws, § 111.) This rule reflects due process
considerations involved in adjudicating rights of an absent
party in an inconvenient forum; it also reflects the interests
of the several states in regulating the marital status of their
domiciliaries and limits forum shopping for self-serving substantive divorce law. (See *Williams* v. *North Carolina, supra,*
325 U.S. 226, 229-230; *Crouch* v. *Crouch, supra,* 28 Cal.2d 243,
251; see von Mehren & Trautman, *Jurisdiction to Adjudicate*:
*A Suggested Analysis* (1966) 79 Harv.L.Rev. 1121, 1130;
*Developments—Jurisdiction, supra,* 73 Harv.L.Rev. 909, 967-968, 973-974.)

Civil Code section 128 implements this rule by requiring
that at least one of the parties to an action for divorce be a
resident of the state for a year before the action is commenced. (See also Civ. Code, § 128.1.) In this context the
statutory terms "residence" and "domicile" are synonymous.[2] (*Haas* v. *Haas* (1964) 227 Cal.App.2d 615, 617 [38
Cal.Rptr. 811]; *Ungemach* v. *Ungemach* (1943) 61 Cal.App.
2d 29, 36 [142 P.2d 99]; see *Smith* v. *Smith* (1955) 45 Cal.2d
235, 239 [288 P.2d 497].)

In *Millar* v. *Millar* (1917) 175 Cal. 797, 807 [167 P. 394,
Ann.Cas. 1918E 184, L.R.A. 1918B 415], this court held that
the statutory residence requirement for divorce did not apply
to annulment proceedings. In that case, however, since both
parties were before the court and the marriage had been entered into in California, the court had no occasion to and did
not consider on what basis a state may constitutionally declare void a marriage of prima facie validity when one of the
parties is not before the court.

---

[2] A majority of the states use length of residence as a basis for jurisdiction. Equating domicile with residence should be unnecessary to fulfill
due process requirements. A reasonable length-of-residence test alone
would obviate the necessity for an often spurious inquiry into intent and
would demonstrate as clearly as domicile that the forum state has an
interest in adjudicating the marital status. (See D. Currie, *Suitcase
Divorce in the Conflict of Laws: Simons, Rosenstiel, and Borax, supra,*
34 U.Chi.L.Rev. 26, 64; Powell, *And Repent at Leisure* (1945) 58 Harv.
L.Rev. 930, 1008-1010.) Several states have statutes permitting resident
servicemen to obtain divorces without inquiry into domicile. These states
apply their own law. (See Cheatham, Griswold, Reese and Rosenberg (5th
ed. 1964) Cases On Conflict of Laws 855-856; Leflar, *Conflict of Laws
and Family Law* (1960) 14 Ark.L.Rev. 47, 49-50.)

Ex parte divorces are a striking exception to the rule that a court must have personal jurisdiction over a party before it may adjudicate his substantial rights. (See von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis, supra,* 79 Harv.L.Rev. 1121, 1129-1130.) The legal fiction that explains the exception by regarding the marital status as a res present at the permanent home of either of the spouses provides doctrinal consistency with other rules governing jurisdiction over things, but the appellation "in rem" is unnecessary to support the conclusion that jurisdiction is properly assumed.[3] (*Williams* v. *North Carolina* (1945) 325 U.S. 226, 232 [89 L.Ed. 1577, 65 S.Ct. 1092, 157 A.L.R. 1366].) *Williams* does hold, however, that due process requires something more than mere presence of a party within a jurisdiction before that party can invoke the legal process of the forum to force an absent spouse to defend her marital status in an inconvenient forum and to subvert the policies of other interested jurisdictions in preserving marriages. When the forum state is also the domicile of one of the parties, however, its interest and that of its domiciliary justify subordinating the conflicting interests of the absent spouse and of any other interested jurisdiction.

Jurisdiction to grant annulments has followed an analogous, but somewhat divergent course. █ An annulment differs conceptually from a divorce in that a divorce terminates a legal status, whereas an annulment establishes that a marital status never existed. The absence of a valid marriage precluded reliance on the divorce cases in formulating a theory of ex parte jurisdiction in annulment, for no res or status could be found within the state. (See Comment (1927) 16 Cal.L.Rev. 38.) The courts, however, did not let jurisdictional concepts of in personam and in rem dictate results in annulment actions. They recognized a state's interest in providing a forum for some annulment actions even though the court lacked personal jurisdiction over one of the parties. (*Buzzi* v. *Buzzi* (1949) 91 Cal.App.2d 823 [205 P.2d 1125]; *Bing Gee* v. *Chan Lai Yung Gee* (1949) 89 Cal.App.2d 877 [202 P.2d 360]; Comment, *Jurisdiction to Annul* (1953) 6

---

[3] Terms such as in rem, quasi in rem, and in personam, seldom solve jurisdictional problems and are often a misleading shorthand for the result. Such terms in statutes, however, may be invoked in their traditional meanings to expand or contract jurisdiction. (See, e.g., Code Civ. Proc., § 417; Traynor, *Is This Conflict Really Necessary?* (1959) 37 Tex.L.Rev. 657, 662-663; *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338, 344-346 [316 P.2d 960].)

Stan.L.Rev. 153.) The crucial question, then, is whether there are sufficient factors to justify the court's exercising ex parte annulment jurisdiction.[4] Although we write on a slate free of legislative directives regarding annulment jurisdiction (*Millar* v. *Millar, supra,* 175 Cal. 797), we are bound by constitutional limitations.

We need not dwell on a resolution of any conflict between the interests of California and Maryland. ▮ The primary issue under the facts of this case is whether due process concepts of fairness to defendant permit plaintiff to choose a forum inconvenient to her absent personal jurisdiction over her. Although a rule that requires a party who is in California and who had been fraudulently induced into a marriage to travel to an inconvenient forum to obtain legal recognition of the nullity of that status works a hardship on that party, such a rule is essential to preclude a transient plaintiff from choosing a forum that would make defense difficult or impossible simply because of physical distance. We find no factor here that would justify an exception to the general rule requiring personal jurisdiction and thereby shift the burden of inconvenience to defendant. ▮ The marriage ceremony took place elsewhere, defendant lives elsewhere, the matrimonial domicile was elsewhere, and witnesses are likely to be located elsewhere. Although domicile of a plaintiff here would afford jurisdiction to award an ex parte annulment,[5] plaintiff in this case did not plead or prove that he was a domiciliary of California when the default judgment was entered. The court was therefore without jurisdiction to enter the default judgment.

Since the entry of the judgment, however, defendant has appeared in the action. We must therefore determine for purposes of proceedings on retrial whether the court may award an annulment when both parties are before it, even though neither is a domiciliary of the state.

---

[4]See D. Currie, *Suitcase Divorce in the Conflict of Laws: Simons, Rosenstiel and Borax, supra,* 34 U.Chi.L.Rev. 26, 39-40; *Developments— Jurisdiction, supra,* 73 Harv.L.Rev. 909, 975-976.

[5]*Buzzi* v. *Buzzi, supra,* 91 Cal.App.2d 823; *Bing Gee* v. *Chan Lai Yung Gee, supra,* 89 Cal.App.2d 877, 883; Comment, *Jurisdiction to Annul, supra,* 6 Stan.L.Rev. 153, 155-159; cf. *Williams* v. *North Carolina, supra,* 325 U.S. 226. It is true that "instant" domicile carries a danger of fraud on the court of a higher magnitude than does a year's residence requirement, which weighs the objective fact of presence more heavily than a declared intent. The bona fides of the intent to make permanent a California residence can be attacked, however, to provide relief against those who would abuse the court's jurisdiction. (*Crouch* v. *Crouch* (1946) 28 Cal.2d 243, 249 [169 P.2d 897]; cf. Civ. Code, § 150.2.)

The primary basis for jurisdiction to resolve disputes between parties is their presence before the court. Plaintiff initiated this action in the only jurisdiction practically available to him because of his military service. Although defendant was not within the jurisdiction of the court when the default was erroneously entered, she voluntarily appeared while the action was before the court. Her appearance was not limited to challenging the jurisdiction of the court, but included a request for relief on the merits by way of an answer and cross-complaint for separate maintenance. (*Judson* v. *Superior Court* (1942) 21 Cal.2d 11, 13 [129 P.2d 361]; *Harrington* v. *Superior Court* (1924) 194 Cal. 185, 189 [222 P. 15]; *Olcese* v. *Justice's Court* (1909) 156 Cal. 82, 88 [103 P. 317].)

Since both parties are properly before the court, we confront the questions whether we may treat the action as a transitory cause (see *Westerman* v. *Westerman* (1926) 121 Kan. 501 [247 P. 863]; *Avakian* v. *Avakian* (1905, N.J. Ct. of Chancery) 69 N.J.Eq. 89, 99 [60 A. 521, 525], affd. 69 N.J.Eq. 834 [66 A. 1133]; Storke, *Annulment in the Conflict of Laws* (1959) 43 Minn.L.Rev. 849, 852) and whether the interest of another state compels us to refuse to hear this cause.

The rule that domicile is a prerequisite to a valid divorce, even when the parties are before the court, may be justified by the superior interests of the domiciliary jurisdiction. Such jurisdiction is primarily concerned with the status of its domiciliaries and the application of its own law in preserving or terminating marriages in accord with its social policies. (See *Development—Jurisdiction, supra,* 73 Harv.L.Rev. 909, 975-976.) When both parties to a divorce action are before the court, however, it is questionable whether domicile is an indispensable prerequisite for jurisdiction. If the moving party's mobility is greatly restricted, for instance, access to a domiciliary forum may be practically unavailable. (*Ibid;* D. Currie, *Suitcase Divorce in the Conflict of Laws: Simons, Rosenstiel and Borax, supra,* 34 U.Chi.L.Rev. 26, 48.) Moreover, when parties secure a divorce without the prerequisite domicile in the forum state, it may not be attacked at a later date by either of them. (*Sutton* v. *Leib* (1952) 342 U.S. 402 [96 L.Ed. 448, 72 S.Ct. 398]; *Cook* v. *Cook* (1951) 342 U.S. 126 [96 L.Ed. 146, 72 S.Ct. 157]; *Johnson* v. *Muelberger* (1951) 340 U.S. 581 [95 L.Ed. 552, 71 S.Ct. 474]; *Coe* v. *Coe* (1948) 334 U.S. 378 [92 L.Ed. 1451, 68 S.Ct. 1094, 1097]; *Sherrer* v. *Sherrer* (1948) 334 U.S. 343 [92 L.Ed. 1429, 68 S.Ct. 1087, 1

A.L.R.2d 1355].) Hence, the prerequisite of domicile may be easily avoided at the trial by parties wishing to invoke the jurisdiction of a court, with little fear in most instances that the judgment will be any less effective than if a valid domicile in fact existed. (See Leflar, *Conflict of Laws and Family Law* (1960) 14 Ark.L.Rev. 47, 51.)

However valid the rationale for the domicile prerequisite may be in divorce actions, it does not apply to annulment actions. In divorce actions, the applicable substantive law changes as parties change their domicile, but in annulment actions courts uniformly apply the law of the state in which the marriage was contracted. (*Colbert* v. *Colbert* (1946) 28 Cal.2d 276, 280 [169 P.2d 633]; *McDonald* v. *McDonald* (1936) 6 Cal.2d 457 [58 P.2d 163, 104 A.L.R. 1292]; Civ. Code, § 63; see Storke, *Annulment in the Conflict of Laws* (1959) 43 Minn.L.Rev. 849, 866.) Moreover, no jurisdictional bar prevents defendant in this case from continuing to press her claim for separate maintenance (see *Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 483 [47 Cal.Rptr. 201, 407 P.2d 1]) and plaintiff may defend on the ground that no valid marriage exists (see *Hudson* v. *Hudson* (1959) 42 Cal.2d 735, 742 [344 P.2d 295]; *Dimon* v. *Dimon* (1953) 40 Cal.2d 516, 537 [254 P.2d 528]; *DeYoung* v. *DeYoung* (1946) 27 Cal.2d 521, 528 [165 P.2d 457]; *Patterson* v. *Patterson* (1947) 82 Cal.App.2d 838, 842-843 [187 P.2d 118]). We conclude, therefore, that the interests of the state of celebration of the marriage or the state of domicile of either party do not preclude a court that has personal jurisdiction over both parties from entertaining an annulment action.

It does not follow that because a court may exercise that jurisdiction it must do so in all cases. In the present case plaintiff was under a special disability in terms of access to any forum other than California.[6] Moreover, defendant was not caught inadvertently within California, and personal jurisdiction was not exercised on a territorial power theory but was obtained over defendant through her consent. Hence, we assume that no undue burdens are placed on her by the trial of the action in California. In other annulment actions where personal jurisdiction is the sole jurisdictional basis, however, the doctrine of *forum non conveniens* might well be invoked by one of the parties, or asserted by the court, to cause a discretionary dismissal when fairness and the inter-

---

[6] Several states considering this disability have enacted legislation permitting servicemen to obtain divorce based on residence. See note 2 *supra.*

ests of judicial administration so demand. (See *Developments —Jurisdiction, supra,* 73 Harv.L.Rev. 909, 968.)

Plaintiff raises a procedural ground to preclude setting aside the judgment. When defendant filed her motion to set aside the default judgment and sought to file her cross-complaint for separate maintenance, plaintiff was outside of the United States by reason of military orders. His attorney filed a request for a stay of proceedings under the Soldiers' and Sailors' Civil Relief Act of 1940.[7] That act provides that at any stage of any proceeding in which a military person is either plaintiff or defendant the court must on his application stay the proceedings "unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by his military service." Plaintiff's attorney urged that because of his absence due to military service plaintiff could not assist him in opposing defendant's efforts to set aside the default judgment or appear as a witness in such further hearings as might be held and that the proceedings must therefore be stayed.

When plaintiff's attorney requested a stay, a default judgment had been entered in favor of plaintiff, and defendant had asked to set it aside and also had requested separate maintenance. Different considerations are involved in regard to each of defendant's requests in ascertaining whether plaintiff's ability to prosecute his action is materially affected by his military service. The grounds urged for setting aside the default judgment, the only issue we reach today, were that it was premature and that the California court was without jurisdiction. Although we have upheld defendant's contentions as to the default judgment, we do not find that plaintiff's military service in any way interfered with his ability to defend that judgment. The facts—dates of publication and actual notice—were not in dispute and were a matter of firsthand knowledge to his attorney as well as to plaintiff. The disputed question was one of law that plaintiff's attorney could take charge of without plaintiff's presence. It is there-

---

[7] "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." (Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 521).)

fore our opinion that plaintiff's prosecution of the case at this stage has not been ''materially affected by reason of his military service.'' When the case is again before the trial court, plaintiff can decide whether to proceed with his action for an annulment. If defendant pursues her cross-complaint, plaintiff can still request a stay. The trial court will then have an opportunity to rule on the request.

The judgment is reversed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.