2006 ME 30

**Wesley W. VON SCHACK**

v.

**Mary Mulhearn VON SCHACK.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 24, 2006.

Decided: March 30, 2006.

Michael P. Asen (orally), Mittel Asen, L.L.C., Portland, for plaintiff.

Elizabeth J. Scheffee (orally), Givertz, Hambley, Scheffee & Lavoie, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] Mary Mulhearn Von Schack appeals from a divorce judgment entered in the District Court (West Bath, *Field, J.*). She raises a single question: When considering a complaint for divorce in which only the plaintiff is a Maine resident, does the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV, § 1, require a Maine court to have personal jurisdiction over the defendant in order to render a divorce judgment that dissolves the parties' marriage without determining the collateral issues of property division, parental rights, or support? We conclude that personal jurisdiction is not required in these limited circumstances, and we affirm the judgment of divorce.

## I. BACKGROUND

[¶ 2] For purposes of this appeal, the parties do not dispute the following facts. Mary Mulhearn Von Schack and Wesley W. Von Schack were married in New York State in 1976 and have one daughter who was born on November 1, 1991. The parties lived in Pennsylvania and New York when they were a couple. Wesley moved to Maine in May 2004 to take a position as an executive in a corporation with offices in Maine. Mary has no contacts with Maine whatsoever. Wesley was unable to proceed with a divorce complaint in Pennsylvania or New York because he is not a resident and has failed to meet other statutory grounds.[1]

[¶ 3] Wesley filed a divorce complaint in the Maine District Court on November 5, 2004, after living in Maine for six months. In January 2005, Wesley had the com-

1. Specifically, New York is a state that does not allow no-fault divorces. *See* N.Y. Dom. Rel. Law § 170 (Consol. 1990 & Pamph. 2005).

plaint served on Mary personally in New York. Mary moved to dismiss the complaint on the grounds that Maine was not a convenient forum and the court lacked personal jurisdiction over her and lacked *in rem* jurisdiction over the parties' property.

[¶ 4] The court denied her motion to dismiss. In so doing, the court concluded first, that it could not grant any relief regarding parental rights and responsibilities because Maine was not the home state of the parties' child for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act, 19–A M.R.S. §§ 1731–1742 (2005), and second, that because it lacked personal jurisdiction over Mary, it could not award support or divide property. It reasoned, however, that "the District Court has original jurisdiction over the dissolution of the parties' marriage and can enter an order regarding any real property in Maine." The court divorced the parties and left all property, spousal support, and parental issues to be litigated in a jurisdiction "that might have personal jurisdiction over both the parties and jurisdiction over the minor child." Mary timely appealed from the judgment.

## II. DISCUSSION

[¶ 5] We begin our analysis with the District Court's conclusion, undisputed by the parties, that Mary "has no contacts with this state whatsoever," and that the court "lack[s] ... personal jurisdiction over [Mary]." If the court erred in concluding that it lacks personal jurisdiction over Mary, it had the authority to enter a divorce judgment. If the court correctly concluded that it lacks personal jurisdiction, however, we must determine whether a court may grant a divorce when one party is not within the reach of the court's personal jurisdiction.

A. Personal Jurisdiction

■ [¶ 6] Although Maine's divorce statute permits a plaintiff to file a complaint for divorce if "[t]he plaintiff has resided in good faith in this State for 6 months prior to the commencement of the action," 19–A M.R.S. § 901(1)(A) (2005), it does not speak to jurisdiction. To determine whether Maine has personal jurisdiction over a defendant, we apply Maine's long arm statute, 14 M.R.S. § 704–A (2005):

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> . . .
>
> **G.** Maintaining a domicile in this State while subject to a marital or family relationship out of which arises a claim for divorce, alimony, separate maintenance, property settlement, child support or child custody; or the commission in this State of any act giving rise to such a claim; or
>
> . . .
>
> **I.** Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

14 M.R.S. § 704–A(2).

[¶ 7] Pursuant to this long arm statute, the court could have obtained personal jurisdiction over Mary in three possible ways: (1) if she "[m]aintain[ed] a domicile in this State while subject to a marital or family relationship out of which arises a claim for divorce," *id.* § 704–A(2)(G); (2) if she "commi[tted] in this State ... any

act giving rise to such a claim," *id.*; or (3) if she "[m]aintain[ed] any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States," *id.* § 704–A(2)(I). *See* Levy, *Maine Family Law* § 2.3 (5th ed. 2006).

[¶ 8] The parties agree that Mary never lived in Maine and never committed any acts in Maine related to the divorce. Accordingly, personal jurisdiction could not be asserted pursuant to section 704–A(2)(G). *See also Jackson v. Weaver,* 678 A.2d 1036, 1039 (Me.1996) (holding that satisfying section 704–A(2)(G) confers personal jurisdiction "to the extent that such personal jurisdiction comports with the requirements of due process").

[¶ 9] Similarly, section 704–A(2)(I) does not confer personal jurisdiction over Mary. Paragraph I permits the exercise of personal jurisdiction as long as a person has a relationship with the State of Maine, any Maine citizens, or Maine property that would afford a basis for jurisdiction consistent with the United States Constitution. 14 M.R.S. § 704–A(2)(I). Consistency with the Due Process Clause of the United States Constitution requires that: " '(1) Maine ha[s] a legitimate interest in the subject matter of this litigation; (2) the defendant, by his conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice.' " *Jackson,* 678 A.2d at 1039 (alteration in original) (quoting *Murphy v. Keenan,* 667 A.2d 591, 593 (Me.1995)).

[¶ 10] We agree with the trial court that Mary lacks any relation to the State that would permit the court to exercise personal jurisdiction consistent with this test. *See id.* The unilateral decision of one spouse to move to Maine does not result in the other spouse "[m]aintain[ing] any other relation to ... persons ... which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States." 14 M.R.S. § 704–A(2)(I). In such circumstances, the *nonresident* spouse did not engage in any conduct that would make it reasonable for her to have anticipated litigation in Maine. *See Jackson,* 678 A.2d at 1039. Accordingly, section 704–A(2)(I) does not confer jurisdiction in the present case.

**B. Jurisdiction Over Marital Status**

[¶ 11] Because the court correctly concluded that it lacks personal jurisdiction over Mary, the question raised by Mary's appeal is whether the court could enter a valid judgment of divorce without obtaining personal jurisdiction over her. To answer this question, we begin by reviewing the evolution of United States Supreme Court jurisprudence regarding jurisdiction. In the late nineteenth century, the Court did not require personal jurisdiction for a state to determine the status of its citizen toward a nonresident. *Pennoyer v. Neff,* 95 U.S. 714, 733–35, 24 L.Ed. 565 (1877). In *Pennoyer,* the Court addressed a dispute over the ownership of land allegedly sold to satisfy a debt on a personal judgment. *Id.* at 720. The Court held that a state's jurisdiction to render judgments *in personam* required personal service and that service by publication would not suffice. *Id.* at 733–34. It took pains, however, to limit the scope of its holding and to clarify that the then current state of the law, allowing a state to determine the marital status of its own citizens, did not fall under this requirement. *Id.* at 734–35. A state possessed the "absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created,

and the causes for which it may be dissolved." *Id.*

[¶ 12] Following the reasoning of *Pennoyer*, the Court later stated, "each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent." *Williams v. North Carolina*, 317 U.S. 287, 298–99, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Such a decree of marital status was entitled to full faith and credit in a sister state. *Id.* at 303–04, 63 S.Ct. 207. In its second opinion in the *Williams* case, the Court reiterated that "one State can grant a divorce of validity in other States ... if the applicant has a *bona fide* domicil in the State of the court purporting to dissolve a prior legal marriage." *Williams v. North Carolina*, 325 U.S. 226, 238, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

[¶ 13] In 1945, the Supreme Court shifted its approach to jurisdictional determinations when it announced the now familiar standard for determining whether a court has jurisdiction over a person: the "minimum contacts" test. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court held,

> due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

[¶ 14] It is important to recall that *International Shoe* was a commercial case, and did not involve marital relationships. *Id.* at 311, 66 S.Ct. 154. Thus, even after the announcement of the minimum contacts test in *International Shoe*, the Court retained confidence in its holding in *Williams* allowing the exercise of jurisdiction by the state of residence of one, but not both, of the parties to a marriage. *See Estin v. Estin*, 334 U.S. 541, 547, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). There, the Court observed the existence of public policy "considerations that have long permitted the State of the matrimonial domicile to change the marital status of the parties by an *ex parte* divorce proceeding, considerations which in the *Williams* cases we thought were equally applicable to any State in which one spouse had established a bona fide domicile." *Id.* (citation omitted).

[¶ 15] Nearly thirty years later, the Court considered whether the minimum contacts test should apply to *in rem* actions affecting property, as well as *in personam* actions. *Shaffer v. Heitner*, 433 U.S. 186, 205–06, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Court concluded that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," and that, "[t]o the extent that prior decisions are inconsistent with this standard, they are overruled." *Id.* at 212 & n. 39, 97 S.Ct. 2569. In reaching this holding, the Court reasoned that "[t]he fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification." *Id.* at 212, 97 S.Ct. 2569. The Court again, however, seemed to signal a different approach to marriage and divorce. In a footnote, the Court noted, "[w]e do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudications of sta-

tus, are inconsistent with the standard of fairness." *Id.* at 208 n. 30, 97 S.Ct. 2569.

[¶ 16] Since *Shaffer*, the Court has not considered whether a court enters a valid judgment of divorce when it determines only the marital status of the parties without obtaining personal jurisdiction over a defendant. The Court has held, however, that when child contact and support are at issue, personal jurisdiction is required. *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). There the Court applied the minimum contacts analysis and determined that personal jurisdiction could not be exercised when the plaintiff sought to determine parental rights and support issues and the defendant had only the following contacts with the forum state: (1) he was married in the state, though it was neither party's domicile at that time; (2) he allowed the parties' children to live with their mother in the state for three months a year; and (3) he agreed to one child's decision to move to the forum state to live with her mother after the parties separated. *Id.* at 93–98, 98 S.Ct. 1690.

[¶ 17] In Maine, we have not yet considered whether a defendant must have minimum contacts with the State for a court to enter a divorce judgment when no property, parental rights, or support issues are determined. Since the United States Supreme Court's adoption of the minimum contacts analysis, we have observed that a court may not entertain a divorce action if a *plaintiff* fails to establish her domicile in Maine when the plaintiff's spouse is also not domiciled in Maine. *Belanger v. Belanger*, 240 A.2d 743, 746–47 (Me.1968); *see also* 19-A M.R.S. § 901(1)(A). We have also affirmed the dismissal of one count of a divorce complaint alleging a property interest in a trust for lack of personal jurisdiction. *Stanley v. Stanley*, 271 A.2d 636, 637–38 (Me.1970). We later

held that "given sufficient contacts with the forum state, personal jurisdiction can be asserted over a non-resident who has received sufficient notice of a divorce action," such that a court can grant relief beyond a determination of marital status. *DeVlieg v. DeVlieg*, 492 A.2d 605, 607 (Me. 1985).

[¶ 18] Thus, although we have inched toward it, we have not reached the question posed today: If a plaintiff establishes his or her domicile in Maine and the defendant has no contacts whatsoever with Maine, but has received adequate notice and an opportunity to be heard, do Maine courts have jurisdiction over the matter sufficient to decide only the issue of the parties' marital status?

[¶ 19] Presented with the same question, other state courts have consistently held that the forum court has jurisdiction to dissolve a domiciliary's marriage without distributing property or determining other rights that would require personal jurisdiction. *See, e.g., Abernathy v. Abernathy*, 267 Ga. 815, 482 S.E.2d 265, 267 (1997) (stating that personal jurisdiction is not required for a Georgia court to grant a divorce because the state only needs jurisdiction over the *res* of the marriage); *Jurado v. Brashear*, 782 So.2d 575, 577 n. 2 (La.2001) (acknowledging the right of a state to prescribe rules governing the marital status of a spouse domiciled in the state, even without personal jurisdiction over the defendant); *Dawson–Austin v. Austin*, 968 S.W.2d 319, 324–25 (Tex.1998), *cert. denied*, 525 U.S. 1067, 119 S.Ct. 795, 142 L.Ed.2d 657 (1999) (holding that jurisdiction to grant a divorce may exist without jurisdiction to adjudicate the parties' property rights); *Poston v. Poston*, 160 Vt. 1, 624 A.2d 853, 855(Vt.), *cert. denied*, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993) (recognizing the "divisible divorce" doctrine which permits dissolution of a

marriage although the court lacks personal jurisdiction over one party and cannot, therefore, resolve other issues raised in the divorce proceeding).

[¶ 20] As the California Supreme Court has observed, "[e]x parte divorces are a striking exception to the rule that a court must have personal jurisdiction over a party before it may adjudicate his substantial rights." *Whealton v. Whealton*, 67 Cal.2d 656, 63 Cal.Rptr. 291, 432 P.2d 979, 982 (1967). A state's interest and that of the domiciliary spouse "justify subordinating the conflicting interests of the absent spouse and of any other interested jurisdiction." *Id.*

[¶ 21] New York itself affords full faith and credit to a sister state's divorce judgment, entered without personal jurisdiction over the defendant, as long as the judgment determines only the marital status of the parties. *Somma v. Somma*, 19 A.D.3d 477, 797 N.Y.S.2d 523, 524–25 (2005). To the extent that any property issues are addressed without personal jurisdiction over both parties, however, New York will not afford full faith and credit to those portions of the judgment. *See id.*

[¶ 22] Although some courts have held that personal jurisdiction is unnecessary to dissolve a marriage because such a judgment amounts to an *in rem* judgment, *see, e.g., Schilz v. Superior Court*, 144 Ariz. 65, 695 P.2d 1103, 1106 (1985) (holding that a sister state's dissolution of a marriage was "an action *in rem* over the marriage status"), we decline to follow this line of reasoning. Based on our reading of *Shaffer*, we conclude that the United States Supreme Court has effectively abandoned this approach by concluding that both *in rem* and *in personam* "assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S. at 212, 97 S.Ct. 2569.

[¶ 23] We conclude that a judgment dissolving a marriage is not a property, or *in rem*, judgment, even if it has collateral effects on the parties' property rights. *See Buchholz v. Buchholz*, 197 Neb. 180, 248 N.W.2d 21, 23 (1976) ("A marriage is not a property interest but is, in essence, a personal relationship subject to dissolution on terms fixed by state law."); *see also Conlon v. Heckler*, 719 F.2d 788, 796–97 (5th Cir.1983) (acknowledging that, pursuant to Texas law, although personal jurisdiction over both parties is not necessary to enter a divorce judgment, personal jurisdiction is required "to otherwise adversely affect the personal or property rights of that spouse"); *Kahn v. Kahn*, 801 F.Supp. 1237, 1243 (S.D.N.Y.1992), *aff'd*, 2 F.3d 403 (2d Cir.1993) (observing that the entry of an ex parte divorce judgment "might also impact property rights derived from one's status as a current spouse"); *Himes v. MacIntyre–Himes (In re Marriage of Himes)*, 136 Wash.2d 707, 965 P.2d 1087, 1093 (1998) (stating that the distribution of property in a divorce action is incidental to the divorce).

[¶ 24] Rather than being a property interest, marriage is a legal union resulting in a legally recognized status or relationship between the spouses. *See* 19–A M.R.S. § 650 (2005); *Belanger*, 240 A.2d at 746 (recognizing the state's interest in the marriage relation); BLACK's LAW DICTIONARY 986 (7th ed. 1999). Marriage is a unique institution by which those who are married enter into a legally recognized personal relationship. *See* 19–A M.R.S. § 650; BLACK's LAW DICTIONARY 986. The Legislature has recognized a number of grounds for dissolving a marriage through divorce. 19–A M.R.S. § 902 (2005). If the parties have "[i]rreconcilable marital differences," for instance, the law of Maine does not require the parties to remain in

the marriage relationship. *Id.* § 902(1)(H).

[¶ 25] Because Maine has a unique interest in assuring that its citizens are not compelled to remain in such personal relationships against their wills and because no personal or real property interests would be determined in the proceeding, we conclude that Maine courts have jurisdiction to enter a divorce judgment without personal jurisdiction over the defendant upon compliance with 19–A M.R.S. § 901(1)(A) and all other procedural requirements. We do not, however, alter or re-evaluate the requirement of personal jurisdiction in any other type of litigation affecting the parties' children, financial responsibilities, or property.

[¶ 26] We also caution that when Maine lacks personal jurisdiction over a defendant in a divorce proceeding, Maine courts must exercise their limited jurisdiction with care. Courts must uphold the due process requirements of notice and an opportunity to be heard, *see DeVlieg*, 492 A.2d at 607 (acknowledging that the exercise of long-arm jurisdiction must comport with due process) and must consider a defendant's assertions of forum non conveniens if the exercise of jurisdiction would further a fraud or create an unwarranted burden or inconvenience for the defendant, *see Corning v. Corning*, 563 A.2d 379, 380 (Me.1989) (adopting the provision in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 84 at 251 (1971) that allows a state to decline to exercise jurisdiction " 'if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff' "). By observing the necessity for basic due process rights of notice and an opportunity to be heard, and by carefully considering the convenience of Maine as a forum, the courts of Maine will continue to safeguard the rights of nonresident defendants while effectuating Maine's strong interest in protecting the rights of Maine residents to obtain judgments dissolving marriages in which they no longer wish to remain.

The entry is:

Judgment affirmed.