Robert N. DAVIS, Appellant,

v.

Linda M. Williams DAVIS, Appellee.

No. 07–FM–418.

District of Columbia Court of Appeals.

Sept. 18, 2008.

BEFORE: WASHINGTON, Chief Judge; REID and THOMPSON, Associate Judges.

ORDER

v.

Linda Margarette Williams DAVIS, Appellee.

No. 07–FM–418.

District of Columbia Court of Appeals.

Argued April 22, 2008.

Decided May 29, 2008.

Amended Sept. 18, 2008.[1]

1. This opinion was issued originally on May 29, 2008. *See Robert N. Davis v. Linda Margarette Williams Davis*, 948 A.2d 1203 (D.C. 2008). Upon consideration of Mr. Davis' post-decision petition for rehearing, and the supplemental briefs relating to that petition, this opinion is being reissued in amended form.

Alan B. Soschin, Washington, for appellant.

Linda Margarette Williams Davis, pro se, filed a brief.

Before WASHINGTON, Chief Judge, and REID and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

Appellant Robert N. Davis filed in the Superior Court Family Division a complaint in which he sought a divorce from appellee Linda Margarette Williams Davis without an adjudication of property rights. He now challenges the March 19, 2007 ruling of the Superior Court granting ap-

pellee's motion to dismiss the complaint on the ground that the District is an inconvenient forum. We vacate the order of dismissal and remand for further consideration by the trial court.

## I.

The parties were married on August 28, 1982, and have one child, born July 18, 1991. They resided for many years in Oxford, Mississippi, where appellee and the minor child still live in the family home.

In 2003, the parties filed cross-petitions for divorce in Mississippi. On July 19, 2004, the Chancery Court of Lafayette County, Mississippi, denied the petitions for failure of proof of the alleged grounds, but the court issued an order governing custody, visitation, and child support. Thereafter, appellant sought a divorce in Florida, where he (or, he and appellee) owned property. That divorce complaint was dismissed pursuant to a joint stipulation of the parties on September 19, 2005.

Appellant filed his "Complaint for Absolute Divorce (One-year Separation)" in the Superior Court on December 23, 2005, stating in the complaint that he had resided in the District for more than six months prior to filing,[2] that he and appellee had lived separately for a period of over one year,[3] and that "[t]here are no real or personal property or support issues that need to be adjudicated by this Court." The court issued an order permitting defendant/appellee Mrs. Davis to be served by publication.

On October 3, 2006, Mrs. Davis filed her motion to dismiss the divorce complaint, citing several grounds. In addition to asserting that she had not been served personally, she argued, in summary, that she

---

**2.** *See* D.C.Code § 16–902 (2001).

**3.** *See* D.C.Code § 16–904(a)(2) (2007 Supp.).

has no ties to the District and the court therefore lacked personal jurisdiction over her, that Mr. Davis was not a *bona fide* resident of the District for the requisite period before filing his complaint, and that the District is an inconvenient forum in which to maintain the divorce action. Mrs. Davis also stated in her motion that she "was compelled to respond to this court because of notice from the court. Nevertheless, this is not a waiver, submission and/or appearance to be utilized to acquire jurisdiction over me, or our child or any property located in Mississippi, Florida and Virginia."

The court granted Mrs. Davis's motion to dismiss the complaint, stating that "a divorce in D.C. without the adjudication of property rights ... is not an option available under D.C.Code § 16–910," and finding that the District is a *forum non conveniens* for resolution of the parties' property rights.[4] The court cited the fact that "the parties' marriage, property, and time together were all in other locations" and also gave weight to appellee's claim that witnesses with relevant testimony regarding property issues all reside in Florida or Mississippi. The court did not address the issue of the duration of Mr. Davis's residence in the District or resolve the issue of whether it had personal jurisdiction over Mrs. Davis.[5]

In this appeal, Mr. Davis argues, as he did before the trial court, that because the only issue his complaint put before the court was whether he is entitled to a divorce on the ground of having lived separate from appellee for over a year and, more specifically, because he did not seek an adjudication of property rights, the court had no need to hear witnesses from outside the District, apply foreign law, or devote substantial resources to resolving the complaint. Therefore, he contends, the District is not a "seriously inconvenient forum" and the court should not have dismissed the complaint.

## II.

We turn first to Mr. Davis's challenge to the trial court's assumption that "a divorce in D.C. without the adjudication of property rights ... is not an option available under D.C.Code § 16–910." D.C.Code § 16–910 states, in pertinent part, that "[u]pon entry of a final decree of ... divorce ... in the absence of a valid ... agreement resolving all issues related to the property of all parties, the Court shall: (a) assign to each party his or her sole and separate property ...; and (b) value and distribute all other property...." *Id.*, §§ 16–910(a) and (b) (2007 Supp.). In *Argent v. Argent*, 130 U.S.App. D.C. 46, 396 F.2d 695 (1968), the United States Court of Appeals for the District of Columbia Circuit, construing the then-current version of section 16–910, explained that "the District of Columbia courts are authorized to adjust and apportion property rights in [jointly held] property and, in fact, *must* do so in the same proceedings in which the divorce decree is entered." [6] 130 U.S.App.

4. The court cited D.C.Code § 13–425 (2001) (stating that "[w]hen any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just").

5. The court treated appellee's motion as a motion to dismiss on the ground of *forum non conveniens*, stating that "[a]lthough Defen-

dant, *pro se,* only makes arguments for why she believes this court lacks jurisdiction, the court deems many of her arguments to be offered in support of a finding that D.C. is an inconvenient forum for the litigation of this case."

6. We are bound by *Argent* because it was decided prior to February 1, 1971. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (decisions of the United States Court of Appeals for

D.C. at 49, 396 F.2d at 698 (italics added).[7] But, as the *Argent* court also explained, section 16–910 "applies only to property located in the District of Columbia," 130 U.S.App. D.C. at 48, 396 F.2d at 697, reflecting the principle that "the power to affect directly title to land resides solely in the courts of the state of the situs of the land." *Id.*

As to marital property located outside the District, the Superior Court Family Division has "jurisdiction of . . . determinations and adjudications of property rights, both real and personal, in any action referred to in this section [including 'actions for divorce'], irrespective of any jurisdictional limitation imposed on the Superior Court." D.C.Code § 11–1101(8) (2001). Accordingly, in a divorce action, the court may adjudicate the rights to marital property located outside the District, and may issue orders requiring the parties to make transfers implementing the court's ruling, even though the court cannot directly award and apportion the foreign property. In light of the trial court's authority under section 11–1101(8) (previously codified as section 11–1141 (1967)), the *Argent* court concluded that although section 16–910 "does not apply per se to land situated outside the District of Columbia . . ., with respect to such land the substance of [§ 16–910] is applicable." 130 U.S.App. D.C. at 49 n. 2, 396 F.2d at 698 n. 2.[8]

the District of Columbia Circuit prior to February 1, 1971, constitute the case law of the District of Columbia).

**7.** *See also In re Hope*, 231 B.R. 403, 413–14 (Bankr.D.C.1999) ("Section 16–910 contemplates that courts must adjust and apportion property rights (or determine that a valid agreement exists that already does so) 'in the same proceeding in which the divorce decree is entered' ") (quoting *Argent*, 130 U.S.App. D.C. 46, 396 F.2d at 696); *see also* Domestic Relations Manual for the District of Columbia § 4.03[1] (stating "the text of the statute appears to prohibit the court from bifurcating the dissolution judgment from the equitable distribution portion of the trial and granting a divorce or legal separation while reserving equitable distribution issues to be determined at a later date"); *see also id.* at § 4.03[3] ("As a general proposition, it does not appear that a Superior Court judge may enter a judgment of divorce without adjudicating property claims, reserving the decision on such issues for a later date, with some limited exceptions").

Among the "limited exceptions": Section 16–910 does not preclude the court from reserving jurisdiction over a contingent property interest and distributing the affected property at a later date. *See Boyce v. Boyce*, 541 A.2d 614, 619 (D.C.1988). Nor does it preclude the court, in exercising its broad discretion to adjust property rights, from distributing property but deferring its sale and allowing the parties to continue using it mutually or allowing one party to use it exclusively for a period of time. *See Carter v. Carter*, 516 A.2d 917, 922 (D.C.1986). And it does not preclude the court from interpreting the nature of property rights arising from an ambiguous provision in a divorce decree and ordering whatever adjustment of the distribution of property is required to comport with the original decree. *Id.* at 923. *But see Reap v. Malloy*, 727 A.2d 326, 330 (D.C.1999) (reasoning that parties could plausibly have understood statement in divorce pleadings to mean that they could continue sharing their possessions instead of dividing their property, notwithstanding that this understanding "may be awkward to square with § 16–910," and citing *Boyce* and *Carter* for the point that "[o]ur case law is equivocal on the extent to which the divorce court's jurisdiction to divide property may be deferred").

**8.** The court noted that with respect to property outside the District, the Superior Court's "enforcement power is limited to determination and adjudication under [D.C.Code § 11–1101] rather than § [16–]910's award and apportionment" [currently, "value and distribute"], *id.*, and that the "difference between 'award and apportion' and 'determine and adjudicate' is simply the difference between directly and indirectly affecting title to land." 396 F.2d at 697. An amendment to section 16–910 changed the terms "award and apportion" to "distribute." Nothing in the legisla-

As the *Argent* court recognized, however, the Superior Court may adjudicate rights with respect to property only if the court has personal jurisdiction over the parties.[9] *See* 130 U.S.App. D.C. at 48, 396 F.2d at 697 ("the court having *in personam* jurisdiction over the parties must determine which party owns each bit of property, and upon that determination can direct the parties to execute such instruments as are necessary to effectuate that adjudication").

In short, the holding in *Argent* is that, by virtue of the interplay of sections 16–910 and 11–1101, in a divorce proceeding where the Superior Court has personal jurisdiction over both parties, the court must in the same proceeding value and distribute marital property located in the District and determine and adjudicate rights in marital property located elsewhere.

In the present case, as noted *supra*, Mrs. Davis asserted that the court lacked personal jurisdiction over her. Without the trial court having found that it did have personal jurisdiction over her, we cannot conclude that District law required the Superior Court to address property issues in order to entertain the divorce proceeding initiated by Mr. Davis. On this point, therefore, we agree with Mr. Davis.

## III.

That does not end the matter, however, because the trial court went on to dismiss the complaint on the ground that the District is an inconvenient forum. It may appear that the court had a duty to decide the issue of personal jurisdiction before going on to consider the issue of *forum non conveniens,* which involves considerations of fairness, convenience and judicial economy rather than jurisdiction. Our case law, however, is to the contrary. As we recognized in our recent decision in *Yazdani v. Access ATM,* 941 A.2d 429, 433 (D.C.2008), "[a] determination on '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Id.* at 433 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 127 S.Ct. 1184, 1191–92, 167 L.Ed.2d 15, 25–26 (2007)) (quoting *Intec USA, LLC v. Engle,* 467 F.3d 1038, 1041 (7th Cir.2006) (internal quotation marks omitted)); *see also Sinochem,* 127 S.Ct. at 1188 (the trial court "has discretion to respond at once to a defendant's forum non conveniens plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has ... personal jurisdiction over the defendant if it determines that, in any event, a foreign

---

tive history suggests that the Council intended this to be a substantive change.

9. "[A] court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *In re T.K.,* 708 A.2d 1012, 1013 (D.C.1998) (quoting *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957)); *see* also *Armstrong v. Armstrong,* 350 U.S. 568, 576, 76 S.Ct. 629, 100 L.Ed. 705 (1956) (holding that Ohio need not give full faith and credit to Florida decree denying alimony to wife, because of the "absence of power in the Florida court to render a personal judgment against [the wife] depriving her of all right to alimony although she was a nonresident of Florida,

had not been personally served with process in that State, and had not appeared as a party"); *Estin v. Estin,* 334 U.S. 541, 548, 68 S.Ct. 1213, 92 L.Ed.1561 (1948) (holding that the court in a jurisdiction where one of the parties to a marriage is domiciled can dissolve the marriage without personal service, but cannot render a personal decree granting or denying alimony). Thus, although the trial court reasoned that it could "issue a judgment that assigns new rights of the parties in relation to the marital home," this conclusion would not be correct if, as Mrs. Davis asserted, the court lacked personal jurisdiction over her.

tribunal is plainly the more suitable arbiter of the merits of the case"). "Where no judgment on the merits will issue, such as in a dismissal on forum non conveniens grounds, '[a] district court ... may ... bypass[ ] questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.'" *Yazdani*, 941 A.2d at 433, quoting *Sinochem*, 127 S.Ct. at 1192. In short, the trial court "has the discretion to dismiss on the basis of improper venue before reaching the issue of personal jurisdiction." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 n. 3 (4th Cir.2006).

 Exercising its discretion, the trial court might have chosen to address the issue of personal jurisdiction and—if it found that it lacked personal jurisdiction over Mrs. Davis, but that Mr. Davis satisfied the statutory residency requirement and that a statutory ground for divorce was met—could have entertained the divorce complaint and entered a decree of divorce without an adjudication of property rights. The court did not do that, however, and we are left with the possibility that

the court exercised its discretion in the manner that it did only because of its error in thinking that section 16–910 would *require* it to adjudicate the parties' property rights if it exercised jurisdiction.[10] Yet, as our case law establishes, "[f]ailure to exercise choice in a situation calling for choice is an abuse of discretion," even where the cause is "ignorance of the right to exercise choice...." *Johnson v. United States*, 398 A.2d 354, 363 (D.C.1979) (citing, *inter alia*, *Grow v. Wolcott*, 123 Vt. 490, 492, 194 A.2d 403, 404 (1963) ("Purporting to be bound to rule as a matter of law will not satisfy the moving party's claim on the court's discretion")). We have held that "reversal should follow if it is discerned that the trial court did not recognize its capacity to exercise discretion or did not purport to exercise it." *Johnson*, 398 A.2d at 367. We conclude that reversal and remand is appropriate here, so that the trial court, instructed by our conclusion in Part II of this opinion, may properly exercise discretion in deciding whether to retain jurisdiction over the divorce action or to dismiss the action, relying on its *forum non conveniens* analysis.[11]

10. In other words, it is possible that the court did not determine that *"in any event,* a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem*, 127 S.Ct. at 1188 (italics added).

11. We note that the Supreme Judicial Court of Maine, on facts similar to those presented here, reasoned that "[b]ecause Maine has a unique interest in assuring that its citizens are not compelled to remain in such personal relationships against their wills and because no personal or real property interests would be determined in the proceeding, we conclude that Maine courts have jurisdiction to enter a divorce judgment without personal jurisdiction over the defendant...." *Von Schack v. Von Schack*, 893 A.2d 1004, 1011 (Me.2006). The court did so notwithstanding a Maine statute, similar to D.C.Code § 16–910, that provides that "[i]n a proceeding for a divorce, ... the court shall ... divide the marital

property in proportions the court considers just after considering all relevant factors." The *Von Schack* court noted other state courts, too, "have consistently held that the forum court has jurisdiction to dissolve a domiciliary's marriage without distributing property or determining other rights that would require personal jurisdiction." 893 A.2d at 1009.

But the Maine court also cautioned that:
[W]hen Maine lacks personal jurisdiction over a defendant in a divorce proceeding, Maine courts must exercise their limited jurisdiction with care ... and must consider a defendant's assertions of *forum non conveniens* if the exercise of jurisdiction would further a fraud or create an unwarranted burden or inconvenience for the defendant.... [B]y carefully considering the convenience of Maine as a forum, the courts of Maine will continue to safeguard

■ Because, on remand, the trial court may elect again to bypass the issue of personal jurisdiction and to rely on its *forum non conveniens* analysis, we go on to consider Mr. Davis's claim that the court abused its discretion in holding that the District is an inconvenient forum for the divorce action. We are satisfied that, on the record before it, the court did not abuse its discretion.

■ As the trial court recognized, "a defendant claiming the benefit of the doctrine of *forum non conveniens* bears the burden of establishing that the balance of equitable considerations is strongly in his favor, and unless he does so, the plaintiff's choice of forum will not be disturbed." *Dorati v. Dorati,* 342 A.2d 18, 20 (D.C.1975) (stating also that the "standard for the application of the doctrine of *forum non conveniens* . . . is whether the forum chosen by the plaintiff is so completely inappropriate . . . that it is better to stop the litigation in the place where it is brought and let it start all over again

somewhere else," *id.* at 23) (citation and internal quotation marks omitted). Yet, "[w]hen a plaintiff ignores a jurisdiction having substantial contacts with his case and which is not inconvenient for him, his choice of a forum elsewhere is outweighed by the forum court's interest in clearing its calendar of foreign actions." [12] *Id.*

■ Not surprisingly in light of the delicate balancing that these considerations require, the trial court has "broad discretion" in ruling on *forum non conveniens* motions. *See DeGroot v. DeGroot,* 939 A.2d 664, 675 (D.C.2008). We will reverse a decision to dismiss for *forum non conveniens* "only upon a clear showing of an abuse of discretion." *Arthur v. Arthur,* 452 A.2d 160, 161 (D.C.1982).

■ Here, the trial court appropriately considered relevant factors identified in *Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and *Dorati,* 342 A.2d at 20–21.[13] In doing so, the

---

the rights of nonresident defendants while effectuating Maine's strong interest in protecting the rights of Maine residents to obtain judgments dissolving marriages in which they no longer wish to remain. *Id.* at 1011.

12. The Supreme Court made similar observations in *Sinochem,* stating that a federal court [H]as discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems. . . . Dismissal for forum non conveniens reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality. . . . We have characterized forum non conveniens as, essentially, a supervening venue provision, permitting dis-

placement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined. 127 S. Ct. at 1190 (citations and internal quotation marks omitted).

13. We explained in *Dorati* that:
The factors to be considered in assessing a *forum non conveniens* claim are those 'practical problems that make trial of a case easy, expeditious and inexpensive' or can make it the opposite; among them are the relative ease of access to proof, availability of compulsory process and the cost of obtaining the attendance of witnesses, the enforceability of a judgment if one is obtained, evidence of an attempt by the plaintiff to vex or harass the defendant by his choice of forum, and other obstacles to a fair trial. . . . Relevant also are interests of judicial administration, including removal from the forum court's crowded docket of cases which bear no relationship to the locality, and avoiding unnecessary interpretation of the law of another jurisdiction.

trial court noted that the many factors that would make it inefficient, costly, and burdensome to maintain the divorce action in the District and that weighed against appellant's choice of forum: (1) Mrs. Davis's continued residence in Mississippi (2) the parties' property located in Mississippi; (3) Mrs. Davis's medical conditions and health-monitoring needs; (4) witnesses, with relevant testimony regarding domestic relations, property, tax, financial and medical issues, who reside in Mississippi or Florida and who would need to travel to the District; (5) a current Mississippi custody and support order that the trial court lacked jurisdiction to modify; (6) Mrs. Davis's financial constraints and her commitment to home-schooling the minor child and supervising his significant extracurricular activities; and (7) the crowded docket in the District.[14] Additionally, the trial court noted that although the Mississippi court denied the parties' cross-petitions for divorce, the denial is now three years old and the parties may now be able to prove grounds for divorce in that more appropriate forum. We note also that appellant's counsel confirmed at oral argument that he knows of no reason why Mississippi would not be an available forum. *See Dorati*, 342 A.2d at 22 ("An essential premise of any application of the doctrine of *forum non conveniens* is the availability of an alternative forum"). Absent a change in the foregoing factors or additional, countervailing factors that the parties may

*Dorati*, 342 A.2d at 20–21 (citations omitted).

14. Mr. Davis appears to be correct that many of these considerations could have been averted had the court determined that it lacked personal jurisdiction over Mrs. Davis and gone on to consider the divorce complaint on its merits without adjudicating property rights. But, as we have said, the court is not required to address first the issue of personal jurisdiction or the issue of whether it has jurisdiction on the basis of Mr. Davis having satisfied the residency requirement. We note

bring to the court's attention, the court would not abuse its discretion in determining (again) to dismiss the divorce action on *forum non-conveniens* grounds.

For the foregoing reasons, we vacate the order of dismissal and remand to the trial court for further proceedings consistent with this opinion.

*So ordered.*

in addition that Mrs. Davis asserted in her motion to dismiss the complaint that "a court ordered dissolution will terminate my rights to Navy retirement funds, full Navy Tricare health coverage and life insurance and any other rights." We express no view as to whether this assertion is correct, but, at least arguably, it describes a matter that the court could consider in determining whether, even absent an adjudication of property rights, it would be unduly burdensome on Mrs. Davis to maintain the divorce action in the District.